**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**PIERRE LAHENS,**

      **Plaintiff,**

**v.**                                      **Civil Action No. 2:16cv20**
                                                **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

      **Defendant,**
**and**

**TERRY O'BRIEN, J. GILLEY,**                **Civil Action No. 1:16cv95**
**SIX UNKNOWN NAMED OFFICERS**         **(Judge Bailey)**
**OF USP HAZELTON SPECIAL TASK FORCE,**

      **Consolidated Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On March 25, 2016, the *pro se* Plaintiff, an inmate incarcerated at FMC Springfield in Springfield Missouri, initiated this case by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.* Plaintiff's FTCA complaint was originally filed on a Bivens[1] form complaint from this district.  ECF No. 1.  In the complaint, Plaintiff alleged that intentional acts, including assault and battery, as well as negligence, were committed upon him by employees of the United States, while he was incarcerated at Hazelton U.S.P., causing him to sustain certain physical injuries, that the officers failed to protect him, and that he was denied medical care for his injuries afterward.[2]

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] On May 23, 2016, Plaintiff filed a Bivens civil rights action arising out of the same claims.  See Case No. 1:16cv95.

The Plaintiff was granted permission to proceed as a pauper on April 19, 2016, and paid his initial partial filing fee on May 31, 2016. ECF Nos. 9 & 11. On June 27, 2016, Plaintiff filed a Motion for Consolidation of Both Cases in the instant case as well as the <u>Bivens</u> action addressing the same claims. ECF No. 13. By Order entered June 30, 2016, Plaintiff was notified of the potential consequences of pursuing both a FTCA and a <u>Bivens</u> case and directed to notify the court within fourteen days if he still wished to proceed on both cases. ECF No. 14. On July 21, 2016, Plaintiff filed his Notification, indicating his desire to pursue both cases. ECF No. 17. By Order entered September 6, 2016, Plaintiff's motion to consolidate was granted. ECF No. 20. By further Order entered on September 13, 2016, Plaintiff was directed to proceed solely on his FTCA claim because resolution of its merits would resolve the <u>Bivens</u> action, and he was further directed to file his FTCA claims on court-approved form FTCA complaint within thirty days. ECF No. 23.

By Order entered October 19, 2016, Plaintiff was directed to show cause why his case should not be dismissed for failure to prosecute. ECF No. 27. On October 24, 2016, Plaintiff moved for an extension of time to file his FTCA complaint on a court-approved form. ECF No. 28. By Order entered October 26, 2016, Plaintiff was granted the requested extension. ECF No. 29. On December 12, 2016, Plaintiff filed his court-approved form FTCA complaint. ECF No. 34.

On December 13, 2016, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Thus, the Clerk was directed to issue summonses and forward copies of the complaint to the United States Marshal Service for service of process. ECF No. 35. On February 8, 2017, the Defendant moved for an extension of time. ECF No. 41. By Order entered February 9, 2017, Defendant's motion was

granted. ECF No. 42. On March 30, 2017, the Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum and exhibits in support. ECF Nos. 45 & 46. Because Plaintiff was proceeding *pro se,* on April 5, 2017, a <u>Roseboro</u> Notice was issued. ECF No. 48. Plaintiff filed a Motion to Amend Defendant's Names on April 10, 2017. ECF No. 49. On April 24, 2017, Plaintiff moved for an extension of time to respond to Defendant's dispositive motion. ECF No. 52. By Order entered April 26, 2017, Plaintiff was granted the extension. ECF No. 53. On June 8, 2017, Plaintiff filed an Incorporated Memorandum of Law in Support of Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 56.

This case is before the undersigned for review, Report and Recommendation pursuant to LR PL P 2.

## II. <u>The Pleadings</u>

### A. <u>The Complaint</u>

In the complaint, the Plaintiff asserts claims of negligence, assault and battery, excessive force, failure to protect, and failure to provide adequate medical care. ECF No. 34 at 6 – 7.

Specifically, Plaintiff alleges that on July 27, 2014, while incarcerated at USP Hazelton, he was shot in the arm, chest and leg by oleoresin capsicum ("OC") pepper balls fired by the USP Hazelton Special Task Force, who, in an attempt to break up a fight between two inmates in the dining hall, fired indiscriminately into a group of 15-20 prisoners, including Plaintiff, who were in a corridor near the dining hall and who were uninvolved in the inmate-on-inmate altercation and were merely attempting to return to their units after receiving their meal trays and/or medications. ECF No. 34-1 at 4 – 5. Plaintiff alleges that other BOP officers "remained marching and looking on" while the USP Hazelton Task Force officers "indiscriminately" fired

pepper balls upon inmates, including him, who were not posing a threat, and thus those officers were negligent for failing to provide protection to him. ECF No. 34 at 7 & 10.

Plaintiff alleges that he suffered temporary blindness, "discomfort in his lungs from the OC powder residue, and mental and emotional trauma [id. at 6]," a "permanent loss of skin" on his left arm, "pain in his left arm, chest, and right leg, and a headache," "swelling and tenderness to his left arm," and instead of receiving medical care or a shower, was returned to his cell for lockdown and did not receive any medical attention for "roughly" 20 hours, and even then, only received an examination of his injuries but no treatment for them. Id. at 12 – 13; see also ECF No. 34-3 at 10. Plaintiff further alleges that a subsequent investigation concluded that the Special Task Force had assaulted him, and that he was innocent of wrongdoing because no charges were filed against him. Id. at 6 – 7.

Plaintiff asserts that his claims are exhausted and in support, attaches a copy of a November 3, 2015 letter from the DOJ denying his administrative tort claim. ECF No. 34-3 at 7.

As relief, Plaintiff requests "$1,500,000.00 dollars[,] including court costs and fees for litigating" this case. ECF No. 34 at 9.

**B. The Defendant's Motion**

The Defendant contends that Plaintiff's complaint should be dismissed or summary judgment granted in its favor. In support, they aver that

1) during July 27, 2014 incident that occurred at approximately 6:15 p.m., the USP Hazelton's "Disturbance Control Team" ("DCT") attempted to respond to request for assistance from the officers on the scene. ECF No. 46 at 2. *En route* to the area, in a narrow area of the corridor, the DCT encountered a group of inmates who refused their orders to lie down, thus impeding the DCT's passage through the corridor to the area of the inmate-on-inmate assault. Id. at 3. Plaintiff admits to being among this group of inmates. Id. After those inmates ignored several orders to lie down, the DCT Lieutenant directed the team to saturate the area, using pepper ball launchers. Id. The team then dispersed two 5-8 round bursts against the walls to saturate the area. Id. At no time did any DCT member intend to shoot at any of the inmates; rather, to saturate the area, the officers aimed at the walls and ceilings above the inmates. Id.

Approximately twenty seconds after the rounds were deployed, inmates slowly began to comply and lie down on the floor, and the DCT team was able to proceed past them them the corridor to the scene of the inmate fight. Id. No member of the team was made aware on that day that Plaintiff claimed to have been hit with one of the projectiles. Id. By the time the DCT team returned to the corridor to decontaminate the area, Plaintiff and all other inmates had already left the area. Id.

2) The United States is not liable for assault or battery because its agents did not intend to cause harmful or offensive contact or the apprehension thereof, to Plaintiff or any individual [id. at 7];

3) the Defendant did not breach its duty to Plaintiff, thus, Defendant was not negligent [id. at 9]; and

4) Plaintiff's medical negligence claim should be dismissed because Plaintiff failed to file a certificate of merit with his complaint, as required by West Virginia law. Id. at 11.

**C. Plaintiff's Response**

Plaintiff reiterates his claims and arguments, and attempts to refute the United States' arguments on the same. ECF No. 56 at 6 – 18. Further, in response to Defendant's contention that his medical claim should be dismissed because he did not file a [screening] certificate of merit with his complaint, he insists that never raised a FTCA medical negligence claim regarding the denial of timely medical treatment, but rather, his medical claim was one of deliberate indifference to serious medical needs in violation of the Eighth Amendment. Id. at 18.

**III. Standard of Review**

**A. Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule

that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as

well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

**B. Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, *supra* at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a

properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, *supra* at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, *supra* at 587. "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> *citing* <u>First Ntl. Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968). <u>See</u> <u>Miller v. Fed. Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Matsushita</u>, *supra* at 587-88; <u>Anderson</u>, *supra* at 248-49.

## IV. <u>Analysis</u>

### A. <u>Jurisdiction and Applicability of the Federal Tort Claim Act</u>

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity by enacting the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* The FTCA provides in § 2674 that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Jurisdiction for violations of the FTCA is governed by 28 U.S.C. § 1346 which provides in subparagraphs (b)(1) and (b)(2):

> (b)(1) [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

> (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

The FTCA waives the Government's traditional immunity from suit for claims based on the negligence of its employees. The FTCA also "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The Government cannot be sued, however, unless Congress has waived the Government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953).

If any exception set forth in 28 U.S.C. § 2680 applies in an action, the United States retains sovereign immunity, and the District Court has no subject matter jurisdiction. Cohen

v. United States, 151 F.3d 1338, 1340 (11th Cir.1998). If either the discretionary function or intentional tort exception applies, the waiver of sovereign immunity is limited and the federal court will lack jurisdiction to hear the case. Williams v. United States, 50 F.3d 299, 304-5 (4th Cir. 1995); Jackson v. United States, 77 F.Supp.2d 709, 713 (D. Md. 1999).

**1) The Discretionary Function Exception to FTCA Liability**

The discretionary function exception is codified in subsection (a) of the statute:

The provisions of this chapter and section 1346(b) of this title shall not apply to— (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

A District Court considering whether the discretionary function exception bars an FTCA claim must determine whether: (1) the action taken involves choice by the acting government employee or a specific course was mandated by statute, regulation or policy; and (2) the choice is "of the kind that the discretionary function was designed to shield." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991).

Because "the United States retains its immunity for torts involving a 'discretionary function or duty' of the Government, regardless of whether or not the discretion was abused," Plaintiff cannot obtain relief for any tort alleged to have been committed by an agent who was performing such a discretionary function. Jackson, *supra* at 713. Thus, Plaintiff must establish that the BOP's agents were not performing a discretionary at the time he alleges he was injured,

and that the Government was not exempt from the FTCA pursuant to subsection (a). The purpose of the discretionary function exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy, though the medium of an action in tort." United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

The BOP has a discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042, which provides, in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall . . . provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." Courts of Appeal have interpreted this statute as granting the BOP discretion in its implementation. "While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." Calderon v. United States, 123 F.3d 947 (7th Cir. 1997). See Carter v. United States, 2002 WL 32332081, *5 (D.S.C.), 57 Fed.Appx. 208 (4th Cir. Mar. 14, 2003)(citations omitted).

**2) The Intentional Tort Exception to FTCA Liability**

The intentional tort exception is codified in subsection (h) of the statute:

The provisions of this chapter and section 1346(b) of this title shall not apply to— (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680.

Under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless those acts are committed by law enforcement officers of the United States. Correctional officers are considered "law enforcement officers" pursuant to 28 U.S.C. § 2680(h). See Ortiz v. Pearson, 88 F.Supp.2d 151, 164 (S.D.N.Y. 2000). Accordingly, the FTCA waives sovereign immunity respecting alleged intentional torts committed by correctional officers; however, if "the actions underlying intentional tort allegations described in § 2680(h), [are] authorized and implemented consistent with federal law and the Constitution of the United States, [such actions] may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law." Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001), citing Jackson v. United States, 77 F.Supp.2d 709, 714 (D. Md. 1999) ("The Court holds that a FTCA plaintiff must first overcome the discretionary function 'hurdle' before the Court will consider intentional tort claims under § 2680(h)."). Moreover, "[i]f a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." Gasho v. United States, 39 F.3d 1420, 1435 (9th Cir. 1994).

Thus, a District Court considering whether the intentional tort exception bars an FTCA claim must determine if the Government's employees, in this case, the USP Hazelton Task Force/DTC officers whom Plaintiff claims injured him, were performing a discretionary function at the time the alleged injuries occurred. If the Court determines that to be the case, the Government and its employees are immune from liability pursuant to the holdings in Medina, Jackson, and Gasho.

**B. This Court Lacks Subject Matter Jurisdiction, Because the BOP's Employees Were Performing a Discretionary Function as Contemplated by the FTCA**

Attached to its dispositive motion, Defendant has provided sworn declarations from two of the officers involved in the July 27, 2014 altercation. The sworn declaration of Senior Officer Specialist Bryan Kunkle ("Kunkle"), a member of the July 27, 2014 DCT, states that '[w]e gave numerous orders for the inmates to lie face down . . . [and they] nonchalantly refused to comply, thus preventing us from reaching the emergency [in the dining hall]." ECF No. 46-4, ¶5 at 2 -3. Lieutenant William Weaver ("Weaver") also provided a sworn declaration, averring that once the inmate fight in the dining room was reported and DTC assistance requested, he followed the DCT team to the area, but on the way, "we encountered multiple inmates in the corridor who were refusing our orders to lie down . . . [b]ecause the inmates' noncompliance was preventing us from reaching the . . . altercation and rendering assistance, I ordered the team to deploy pepper balls[.]" ECF No. 46-3, ¶¶ 4 – 7 at 2 – 3. As noted *supra,* the Defendant's goal of deploying the pepper balls was to "saturate" the area, by shooting the balls at the walls and ceilings *above* the inmates, where they would burst and release the OC spray. ECF No. 46 at 8. Despite his claim elsewhere that the DCT members fired "indiscriminately" at the inmates in the corridor, Plaintiff himself admits that the pepper balls were fired above and not *at* the inmates. See ECF No. 34-1 at 5 (USP Hazelton Special Task Force . . . shot pepper[]ball continuously towards to walls over the prisoners' head[s] while marching past them."). Moreover, the Plaintiff admits that the DCT "*provided an audible warning prior to shooting* towards the . . . prisoners, and . . . informed the prisoners how to appropriately extricate themselves in the corridor in order to avoid becoming the target of USP Hazelton Special Task Force." Id. at 3. Nonetheless, Plaintiff and the other inmates still did not immediately comply. Plaintiff's response to the Defendant's dispositive motion implicitly admits as much, saying

> The DTC officers did not give an order to the group to lie face down on the ground. There can therefore be no failure to comply with orders, and Mr. Lahens' actions cannot be viewed as even non-compliance. *Therefore, even if Mr. Lahens*

> *heard and was in non-compliance with the DTC officers' order to lie face down on the ground, this single act of non-compliance, without any attempt to threaten the DTC officers or place them at risk, would not rise to the level of active resist[a]nce.* There is therefore no justification for the use of force[.]

ECF No. 56 at 14 (emphasis added). Plaintiff's position on this misapprehends the fact it is not for inmates like himself to decide whether their noncompliance with orders places others at risk; it is the BOP's decision, and it is the BOP's duty to prevent that risk.

Accordingly, the undersigned finds that the decision to use force against Plaintiff on July 27, 2014, was an appropriate discretionary function, based on the group of inmates, including Plaintiff, who refused to cooperate with the DTC officers who were attempting to pass through the narrow corridor so that they could get to the inmate-on-inmate assault that had been reported in the dining hall. This created a potentially volatile situation, interfering with the BOP's duty of care under 18 U.S.C. § 4042, to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." The statute sets forth no particular conduct that BOP personnel should engage in or avoid, while attempting to fulfil their duty to protect inmates. See Calderon, *supra* at 2002 WL 32332081, *5.

Plaintiff's response to the Government's dispositive motion fails to establish that the Government's application of force, which may have resulted in injury to him, was anything but discretionary. Instead, Plaintiff admits that he initially refused the repeated orders to lie down, and instead, focuses on his minimizing his own responsibility for involvement in the incident and describing his alleged injuries. Because Plaintiff has not overcome the discretionary function hurdle, it is unnecessary to consider whether the intentional tort exception applies.

However, even if the undersigned were to perform an intentional tort exception analysis, Plaintiff's suit would still lack merit. The BOP employees identified by Plaintiff as the Government agents who injured him are correctional officers, and as such they are subject to both the same liability and immunity which applies law enforcement officers. Because the alleged intentional torts of those agents were implemented consistent with federal law and the Constitution, those actions may properly be considered discretionary functions. Accordingly, the undersigned finds that even if the actions of BOP correctional officers could have been considered intentional torts, which they clearly were not, because those actions were lawfully performed consistent with federal law, the actions were discretionary functions, and the Government is thus immune from suit under the FTCA.

There is absolutely no evidence, however, other than the Plaintiff's own conclusory allegations, to show that Government's agents had the necessary intent to commit an assault and battery upon him. Instead, the undisputed evidence shows that DTC team properly applied a compliance technique to gain quick control of a group of noncompliant inmates, Plaintiff among them, who were impeding the DTC team's access to an inmate-on-inmate assault occurring in the dining hall. The undisputed evidence also shows that the use of that technique was reasonable under the circumstances. Accordingly, the Defendants are entitled to judgment as a matter of law on this claim.

Finally, Plaintiff's allegations regarding the injuries he sustained in the July 27, 2014 incident have no objective support in the record. Plaintiff contends that he suffered temporary blindness; lung discomfort; mental and emotional trauma; permanent loss of skin on his left arm; pain in his left arm, chest, and right leg; headache; and swelling and tenderness to his left arm.

The BOP's own conclusion regarding the incident is summed up in its November 3, 2015 Administrative Tort denial letter, which states in pertinent part that

> There is no record you reported being injured during this incident. As you were not one of the inmates involved in the initial altercation, and if you were in fact struck by a pepper ball on July 27, 2014, it is presumed you were one of the inmates failing to follow the direct orders of staff to get on the ground. Your medical file indicates you presented to Health Services on July 28, 2014, with an abrasion to your left arm, stating you had been hit the previous day with a pepper ball. You told medical staff your pain scale was zero, and they noted no other injuries.

ECF No. 34-3 at 7.

Consistent with that, the record reveals that when Plaintiff was examined by Health Services, roughly 20 hours later, Plaintiff reported no eye, lung, chest, leg, or mental or emotional injury; he did not complain "loss of skin" on his left arm, permanent or otherwise; pain in his left arm or, for that matter, pain anywhere else in his body. He reported having been struck with "*a* pepper ball" the day before and showed the examining RN an abrasion on his arm that was less than a half inch in diameter. He specifically denied any other injury. See ECF No. 46-4 & ECF No. 46-5.

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction and that Plaintiff's claims regarding negligence, assault, battery, and failure to protect should be dismissed.

## C. Medical Negligence for Failure to Provide Adequate Medical Care

To establish a medical negligence claim in West Virginia, the plaintiff must prove that: (a) the health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death. W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed

and treated, and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required.  Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-06 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued.  W.Va. Code § 55-7B-6.   This section provides in pertinent part:

### § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against   any health care provider without complying with the provisions of this section.

(b) *At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim* on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, *together with a screening certificate of merit*. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

W.Va. Code § 55-7B-6 (emphasis added).

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806 - 807 (N.D. W.Va. 2004).  In Stanley, the plaintiff brought suit against the United States alleging that

the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

Here, the Plaintiff's complaint alleges that the BOP employees "provided negligent treatment" to him after the pepper ball assault that caused him to suffer severe pain [ECF No. 34 at 8], because unspecified BOP employees immediately locked him down, and no one provided him with a shower, medical care, or combative instructions" for at least 20 hours after the assault, even though "they" knew he was at risk for serious injury when they did so. Id. at 10. In his memorandum in support of his complaint, he alleges that he first reported having been hit during the July 27, 2014 altercation to USP Associate Warden Odom "[t]he following day at lunchtime mainline [ECF No. 34-1 at 6]" and avers that he was "only able to see medical staff the day following the assault" and that the medical staff never provided any treatment, only examined his injuries. Id. at 13. Both the Plaintiff and the Defendant have produced a copy of that July 28, 2014 Health Services Clinical Encounter, showing that Plaintiff was examined by Richard Dennison RN at 14:52, or 2:52 p.m. See ECF No. 34-3 at 10 & ECF No. 46-5 at 4.

There is no support in the record for Plaintiff's claims that either the DCT team or any of the USP Hazelton medical staff ever denied him medical attention. Nor is there any support in the record for Plaintiff's claim that he ever requested any medical attention. With regard to the appropriate standard of care, Plaintiff has failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of "temporary blindness," "discomfort in his lungs from the OC powder residue, and mental and emotional trauma," [ECF No. 34-1 at 6], in addition to "significant damage to his arm, chest, and leg, causing a permanent loss of skin," "stinging sensation in the eyes and on the skin," a headache, and "a skin lesion to his left arm" with "swelling and tenderness." Id. at 12. Plaintiff offers no

19

pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of these alleged injuries, and the copies of 3 pages of Plaintiff's medical records provided by the parties are insufficient to establish the standard of care. Under the circumstances of this case, Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the Defendant's breach of the duty of care.

Moreover, a careful review of the copies of 3 pages of Plaintiff's medical records, attached to the Defendant's dispositive motion, reporting his July 28, 2014 Health Services examination by Richard Dennison RN, the day after the "altercation on 7/27/14," contrary to Plaintiff's claim that he had "temporary blindness," "discomfort in his lungs from the OC powder residue, and mental and emotional trauma," "significant damage to his arm, chest, and leg, causing a permanent loss of skin," "stinging sensation in the eyes and on the skin," a headache, and "a skin lesion to his left arm" with "swelling and tenderness, Plaintiff's only reported injury that day was a 10 mm x 10 mm abrasion to his left posterior forearm. ECF No. 46-5 at 4. Ten millimeters is 0.3937007874 inches. See Millimeters to Inches conversion table, available at: < http://www.rapidtables.com/convert/length/mm-to-inch.htm > Plaintiff did report having been "hit with pepper ball" the day before, but he never mentioned having been hit in the chest, leg *and* arm; he reported that his pain scale for the arm abrasion was "0" on a pain scale of 1 – 10; and he reported that he had no other injuries. Id.

Defendants also attach the sworn declaration of RN Dennison, who avers that that at time of the July 28, 2014 visit, Plaintiff appeared "worked up, but did not complain of pain." Dennison avers that he "instructed Plaintiff to follow up at Sick C bvall as needed" and that "Sick Call is available to inmates Monday to Friday at 6:00 a.m. To my knowledge, Plaintiff did

not request Sick Call on the morning of July 28, 2014." Further, Dennison avers that "[d]uring the remainder of Plaintiff's incarceration at USP Hazelton, he had access to medical care from the medical staff at the institution." Id.

Despite Plaintiff's denial in his response to Defendant's dispositive motion, that he did *not* raise a medical negligence claim in his FTCA action, but rather, only a claim of an Eighth Amendment deliberate indifference to serious medical needs (presumably intended for his Bivens action), in this Court's September 13, 2016 Order Notifying Plaintiff to Proceed Solely on the Federal Tort Claim Action and Directing the Clerk to Send Plaintiff a Form to File the Federal Tort Claims Action, Plaintiff was specifically advised that his FTCA claims would be considered first, "because resolution of it on the merits will resolve the Bivens action." ECF No. 23. Further, in the FTCA complaint Plaintiff filed in response to that Order, in Claim Three, Plaintiff specifically alleges that the BOP employees "provided negligent treatment" to him after the pepper ball assault that caused him to suffer severe pain. ECF No. 34 at 8. Elsewhere, Plaintiff alleges that he endured a 20-hour delay in receiving medical treatment for his paint ball injury, and that even then, he received no actual treatment for his injury, but rather, only an examination of the injury, with photos taken. ECF No. 34-1 at 6. Moreover, although Plaintiff's response to Defendant's dispositive motion continues to insist that the DTC officers were deliberately indifferent to his serious medical needs, even liberally construed as a claim of medical negligence, Plaintiff's claim that the DTC "purposefully refused" to provide him medical care [ECF No. 56 at 18] fails. The sworn declarations of Kunkle and Weaver, members of the DCT, both aver that they were unaware that Plaintiff claimed he was hit by one of the pepper balls that day. See ECF No. 46-4, ¶ 9 at 3 and ECF No. 46-3, ¶ 10 at 3.

Further, nowhere in his pleadings has Plaintiff alleged that he asked any BOP employee for medical care. A careful review of the record reveals that Plaintiff alleges he first told Associate Warden Odom that he had been injured during the incident at lunchtime, the day after it happened. Plaintiff's attached medical record for the day reveals that he was seen at 2:52 p.m., which appears to be right after "lunchtime." Further, Plaintiff's failure to request medical care for his alleged injuries is corroborated by RN Dennison's sworn declaration; Dennison averred that to his knowledge, Plaintiff had not even requested sick call the day he examined him, one day after the incident [ECF No. 46-5, ¶ 6 at 2], leading to the inference that Associate Warden Odom sent Plaintiff there to be evaluated. Of note, Plaintiff's response is silent as to this issue. Finally, nowhere in his pleadings does Plaintiff ever allege that the alleged 20-hour delay caused any worsening of his condition. Indeed, given the description of the *de minimis* injury documented in the record, it does not appear that there was any.

Finally, to the extent the Plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the Plaintiff has met the requirements of W.Va. Code §55-7B-6. Thus, upon consideration that Plaintiff's allegations regarding his injuries involve complex medical ailments, the Court finds that a screening certificate of merit is required. Plaintiff has not obtained one, and the time for doing so is now long past. Consequently, the United States' motion to dismiss or grant summary judgment in its favor should be granted.

**D. Plaintiff's Pending Bivens Action**

For purposes of explanation, a plaintiff seeking relief against a federal official for injury has two separate and distinct claims for relief. He may file a common law tort claim against the United States under the FTCA and, or in the alternative, he may file a constitutional tort claim

against the individual officials under <u>Bivens</u>. The two claims are separate causes of action with different standards of proof and there are advantages and disadvantages to each. The defendant in a FTCA action is the United States. However, in a <u>Bivens</u> suit, the defendant is the individual official. See 28 U.S.C. §§ 1346(b) & 2674. Therefore, payment of a successful FTCA claim is paid by the United States Treasury; while a successful judgment against an individual may not be satisfied if the defendant lacks sufficient assets. In addition, while a jury trial is available in a <u>Bivens</u> action, only a bench trial is permitted under the FTCA. 28 U.S.C. § 2402. Furthermore, punitive damages are available in a <u>Bivens</u> action but are not available under the FTCA. <u>Id</u>. § 2674.

Finally, and most importantly, a judgment under the FTCA constitutes "a complete bar to any action by the plaintiff, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. This is true whether the FTCA claim is brought before or after the <u>Bivens</u> claim or if both claims are brought in the same suit. Likewise, this is also true whether the FTCA judgment is favorable to the plaintiff or the United States. *Compare* <u>Unus v. Kane</u>, 565 F.3d 103, 121-22 (4th Cir. 2009)(same suit, FTCA judgment for the United States), with <u>Rodriquez v. Handy</u>, 873 F.2d 814, 816 (5th Cir. 1989)(same suit, FTCA judgment for plaintiffs); *compare also* <u>Farmer v. Perill</u>, 275 F.3d 958, 959 (10th Cir. 2001)(different suits, FTCA judgment for the United States) with <u>Moon v. Pace</u>, 213 F.2d796 (5th Cir. 1954)(different suits, FTCA judgment for plaintiff).

Accordingly, in light of the undersigned's recommendation that the FTCA be dismissed with prejudice, it would appear that Plaintiff's consolidated <u>Bivens</u> complaint, in Case No. 1:16cv95 likewise should be dismissed with prejudice.

## V. <u>Recommendation</u>

For the reasons set forth in this above, it is recommended that the Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment [ECF No. 45] be **GRANTED** and Plaintiff's FTCA complaint be **DISMISSED with prejudice as frivolous and for its failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §1915A(b)(1) and 1915(e)(2)(B)(i).**[3] Likewise, the undersigned recommends that Plaintiff's <u>Bivens</u> action, Case No. 1:16cv95, consolidated with this FTCA action, also be **DISMISSED with prejudice** on the same grounds.

Further, the undersigned recommends that Plaintiff's pending Motion to Amend Defendants' Names [ECF No. 49] be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the

---

[3] The plaintiff is warned that that pursuant to 28 U.S.C. §1915(g) he will not be granted *in forma pauperis* status in the future, if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." The instant case will be the first filed by plaintiff in this district that has been recommended for dismissal as frivolous. A PACER search indicates that Plaintiff has already had one previous case dismissed for failure to state a claim upon which relief can be granted. <u>See</u> <u>Lahens v. Jozwick</u>, SD Fla. Case No. 9:10cv80416.

docket. This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: September 11, 2017

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE